# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DARRIN CORE, | : | CIVIL ACTION NO. 21-384 |
| 5775 Boucher Dr. | : | |
| Orient, OH 43146, | : | |
| | : | |
| and | : | |
| | : | |
| MARK MILLER, | : | |
| 5775 Boucher Dr. | : | |
| Orient, OH 43146, | : | |
| Plaintiffs, | : | |
| | : | JUDGE |
| v. | : | |
| | : | MAGISTRATE JUDGE |
| CHARLES "GREGORY" SKINNER, | : | |
| 3011 Columbus St. | : | |
| Grove City, OH 43213, | : | |
| | : | |
| and | : | **COMPLAINT** |
| | : | |
| VIP REALTY INC., | : | |
| C/O Aubrey L. Hinely | : | |
| 1111 Cole Rd. | : | |
| Galloway, OH 43119, | : | |
| | : | |
| and | : | |
| | : | |
| JAMES W. MOORE, | : | |
| C/O Brian Duncan | : | |
| 119 E. Granville St. | : | |
| Sunbury, OH 43074, | : | |
| | : | |
| and | : | |
| | : | |
| KRISTY A. MOORE, | : | |
| C/O Brian Duncan | : | |
| 119 E. Granville St. | : | |
| Sunbury, OH 43074, | : | |
| | : | |
| Defendants. | : | **JURY DEMAND ENDORSED HEREON** |

1

**I.     Preliminary Statement**

1.     This action seeks compensatory and punitive damages; declaratory, injunctive and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, *et seq.*, and the Ohio Laws Against Discrimination, O.R.C 4112, *et seq.*, committed when Defendants sold the house located at 7512 Vern Place, Orient, Ohio, 43146, to a male and female couple, despite Plaintiffs' significantly superior offer, because of sex in that, had one Plaintiff been female and the other male, Plaintiffs' superior offer would have been accepted.

**II.    Jurisdiction and Venue**

2.     This Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights); and 1367 (supplemental jurisdiction).

3.     Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because the claims arose in Franklin County, Ohio, where Defendants refused to sell Plaintiffs the house located at Vern Place.

**III.   Parties**

4.     Plaintiff Darrin Core is male, over the age of eighteen, and a resident of Pickaway County. Mr. Core is a Nurse and Licensed Social Worker and is engaged in a long-term relationship with Plaintiff Mark Miller.

5.     Plaintiff Mark Miller is male, over the age of eighteen, and a resident of Pickaway County. Mr. Miller is a business owner. Mr. Miller is in a long-term relationship with Plaintiff Darrin Core.

6. Defendant Charles "Gregory" Skinner is a licensed real estate agent who specializes in high-quality residential home sales and claims to be one of the top individual real estate agents in Grove City. Mr. Skinner has been a practicing real estate agent for more than 10 years.

7. Defendant VIP Realty Inc. is a for-profit corporation licensed to do business in Ohio. VIP Realty Inc. engages in the real estate sales industry and at all times relevant to this Complaint was the employer of Defendant Skinner and the company which hosted the listing for the Vern Place home.

8. Defendant James Moore is over the age of eighteen and a resident of Franklin County. Mr. Moore was the joint owner of 7512 Vern Place and hired Defendants Skinner and VIP Realty Inc. to sell the property.

9. Defendant Kristy Moore is over the age of eighteen and a resident of Franklin County. Mrs. Moore was the joint owner of 7512 Vern Place and hired Defendants Skinner and VIP Realty Inc. to sell the property.

**IV.     Facts**

10.  Defendant James Moore and Defendant Kirsty Moore (hereinafter collectively referred to as "The Moores") decided to sell their primary residence located at 7512 Vern Place ("Home").

11. The Moores hired Defendant Skinner and Defendant VIP Realty to list the Home.

12. On January 9, 2020, Defendant Skinner and Defendant VIP Realty publicly listed the Home for sale for $739,000.

13. In late 2018, Plaintiff Mr. Core and Plaintiff Mr. Miller (hereinafter collectively referred to as "Plaintiffs") began searching for a new house.

14. Plaintiffs sought a house to be their "forever home" and required any potential home to have certain features. These included at least 3,500 square feet of living space, being turnkey ready, having a pool and outbuilding, and in the Grove City, Ohio area.

15. Plaintiffs were aware that there was a limited market for houses that would meet all their requirements. They understood that any such house would have a significant asking price.

16. Prior to touring any houses, Plaintiffs sought to ensure that their finances were in order so they could make an immediate purchase offer after touring a house.

17. Prior to touring any houses Plaintiffs worked with their bank, First State Bank, to determine their mortgage eligibility. Based on their financial history, assets and income levels, Plaintiffs were prequalified for a mortgage exceeding $500,000. With assets to close on a home in excess of $750,000.

18. With this prequalification, Plaintiffs would have been able to purchase the Home at its full asking price.

19. Plaintiffs used Real Estate Agent Evie Miller to assist with their search. Ms. Miller has more than a five decades of experience and considerable real estate connections.

20. On January 19, 2020, Plaintiffs toured the Home and instantly fell in love with the features of the Home and the location of the property.

21. The Home met all their needs: it had 3,500 square feet of living space, was recently updated, had a luxurious pool with a water slide and an outbuilding, and was located in the Grove City, Ohio area.

22. On January 21, based on advice from Ms. Miller which came from her knowledge of similar houses in the area and the current market for such houses, Plaintiffs made an offer of $685,000 to purchase the Home.

23. Plaintiffs attached their bank's prequalification letter to the offer to show that they had the financial wherewithal to complete the purchase.

24. Defendant Skinner was readily able to determine from the offer that Plaintiffs were two men seeking to purchase a single-family detached residence.

25. There was no indication that Plaintiffs were seeking to purchase the Home as an income property or on behalf of others.

26. At this point Defendant Skinner, Defendant VIP Realty Inc., and The Moores were aware that a male couple was attempting to purchase the Home.

27. Hours after the offer was submitted, Defendant Skinner responded to Plaintiffs' initial offer and provided a counteroffer of $725,000 purchase price and a requirement that closing and title work be done by Prime/Chicago Title.

28. Defendant Skinner and, based on information and belief, Defendant VIP Realty has a financial interest in Prime/Chicago Title. Neither Defendant disclosed that financial interest to Plaintiffs.

29. Defendant Skinner emailed Plaintiffs' agent, Ms. Miller, and explained that The Moores were firm on the price of $725,000 and *would not accept a lower price* for the Home or additional negotiations.

30. As the Plaintiffs were prequalified for a loan that would easily allow them to purchase the Home, and found the Home to be perfect for them, they quickly provided a counter that night offering $725,000, with an inspection and other typical clauses.

31. Plaintiffs sought a closing date of on or before March 16, 2020, only 55 days after the offer, and a typical closing timeline for the central Ohio real estate market.

32. One day after Plaintiffs provided the counteroffer, Defendant Skinner reached out to Plaintiffs' bank directly to inquire about their finances.

33. It is extremely atypical for a selling agent to reach out directly to a putative buyer's lender rather than communicate through the buyer's known agent.

34. Mr. Skinner e-mailed Mark Richards at First State Bank: "the buyers (sic) agent (who is the buyers (sic) mother) keeps sending me an offer and counters on a closing date which are way beyond what is normal. * * * I do not let my sellers wait for 75 days to close a home."

35. In the e-mail to Mr. Richards, Defendant Skinner intentionally misrepresented Plaintiffs' proposed closing time and that they had provided multiple offers and counter offers.

36. In Realty, Plaintiffs sought to close in 55 days or less and had provided a single offer and counteroffer in response to communications from Defendant Skinner and The Moores.

37. Mr. Richards responded to Defendant Skinner hours later, writing "my borrower has no issues credit wise and has sufficient funds to close."

38. Mr. Richards also informed Mr. Skinner that he tries to close loans as "quickly as possible" and that he used March 15, 2020, as the furthest out date for closing to ensure that there would be no issues or delay beyond that.

39. Based on Mr. Richards' unambiguous representations, Defendant Skinner and the Moores knew that Plaintiffs could close on the home for $725,000 on or before March 15, 2020, only 52 days after the e-mail exchange between Defendant Skinner and Mr. Richards.

40. Despite these assurances from the bank, Defendant Skinner e-mailed Ms. Miller on January 24, 2020, copying The Moores. He wrote: the lender answered me late yesterday and did state that he CAN NOT close your clients until the middle of March AT THE EARLIEST." (emphasis in original, parenthetical omitted)

41. Defendant Skinner intentionally misrepresented Mr. Richards' e-mail to The Moores and Ms. Miller. Defendant Skinner did not provide Ms. Miller or The Moores with Mr. Richards' response indicating that March 15, was the latest possible closing date not the earliest as he contended.

42. In addition to falsely representing the exchange he had with Mr. Richards, Defendant Skinner informed Plaintiffs that the price for the Home would be increasing to $739,000.

43. Based on Defendant Skinners' erratic and unprofessional behavior, Plaintiffs became concerned that he and/or the Moores did not intend to sell them the Home.

44. Plaintiffs were concerned that the changing and increasing price of the Home was an attempt by Defendant Skinner and/or The Moores to have them withdraw their bid for the Home so that it could be sold to a couple consisting of a male and female.

45. Despite their concern that Defendant Skinner and/or the Moores was actively working to stymie their purchase attempts because of they were a male couple, Plaintiffs continued in their pursuit of the Home.

46. At 12:14 p.m. on January 25, 2020, Defendant Skinner issued another counteroffer to Plaintiffs. In that counteroffer he demanded that Plaintiffs provide a non-refundable $7,500 earnest money deposit on the Home and stated that The Moores would offer no remedy for any issues identified on inspection.

47. The counteroffer demanded that Plaintiffs respond before 6:00 p.m. that night, providing them a mere six hours on a Saturday to agree to the contract.

48. A few days later, on January 29, 2020, Plaintiffs called Defendant Skinner directly to discuss the issues that had been occurring with the sale.

7

49. Mr. Miller expressed his frustration with the process and directly asked Defendant Skinner if his and Mr. Core's same-sex relationship was an impediment to the sale.

50. Defendant Skinner demurred with the stereotypical defense that he was "friends with many gay people," adding that his friends were "florists and funeral directors," a likely reference to two recent highly publicized sex discrimination cases.

51. Mr. Skinner then made disparaging remarks about Plaintiffs' current community of Southern Point, stating that he did not believe the "plumbers and nurses" who lived there could afford to purchase the Home.

52. When Defendant Skinner made that remark he already knew that Plaintiffs had the assets to purchase the Home.

53. Plaintiffs were taken aback by Defendant Skinner's conduct and bizarre tone during the call. They were disappointed by his stereotypical and inaccurate responses, but they still attempted to purchase the Home.

54. When reviewing records related to the Home, Plaintiffs learned that there could be a zoning issue with the pool.

55. Plaintiffs informed Defendant Skinner about the pool encumbrance issue, and Defendant Skinner worked with Plaintiffs to obtain the proper permissions to investigate the issue.

56. During the communications about the pool, Plaintiffs told Mr. Skinner that they were highly interested in purchasing the Home and wanted to be alerted if another offer was made.

57. Defendant Skinner assured Plaintiffs that, if other offers were made on the Home, he would provide them a last and final opportunity to bid on the Home.

58. A promise to provide a last and final bid opportunity is a binding promise for real estate agents pursuant to their ethical rules.

59. Even though Defendant Skinner promised to allow Plaintiffs to make a final bid on the Home, on February 18, 2020, Defendant Skinner reported to Ms. Miller that the Home had been sold.

60. The Moores agreed to sell the Home to a male and female couple for the price of $685,000, *$40,000 less* than Plaintiffs' last offer.

61. After the Home closed on March 11, 2020, only four days prior to the "worst case" closing date that Plaintiffs offered, Defendant Skinner advertised that the Home was sold at his direction with only a few adjustments.

62. Based on the speed with which The Moores and Defendant Skinner sold the Home to a male and female couple, it is clear that they did not present the same obstacles to the sale that they did to Plaintiffs.

63. Defendant Skinner must have advised The Moores to sell the home for $685,000, and The Moores must have accepted such a discounted price because of discriminatory animus against Plaintiffs.

64. Plaintiffs were distraught after losing their dream home and contacted the Home's builder to inquire about the price of building a similar home.

65. Plaintiffs explained they offered $725,000.00 for the home. The builder stated that he could not provide a similar home for that price, or close to it, and that Plaintiffs lost "a great deal on the Home."

66. To date, despite diligent efforts, Plaintiffs have were not able to find an already built hose that compared to the Home. Therefore, they began the process of constructing a new home that will cost considerably more than the Home. house.

67. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer from emotional distress, humiliation, and frustration.

68. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer economic damage by not being able to realize any appreciation of the value of the Home.

69. In refusing to sell Plaintiffs the Home because they were both male , Defendants acted in reckless disregard of Plaintiffs' right to be free from being victims of sex discrimination in violation of the Fair Housing Act and the Ohio Laws Against Discrimination.

## V. Cause of Action

### A. First Claim: Violation of the Fair Housing Act

70. Paragraphs 1 through 69 above are realleged and incorporated herein.

71. By refusing to sell Plaintiffs the Home, despite their superior bid, and then selling the Home to a male and female couple, Defendants violated the Fair Housing Act.

### B. Second Claim: Violation of Ohio Laws Against Discrimination

72. Paragraphs 1 through 69 above are realleged and incorporated herein

73. By refusing to sell Plaintiffs the Home, despite their superior bid, and then selling the Home to a male and female couple, Defendants violated the Ohio Laws Against Discrimination.

## VI. Prayer for Relief

WHEREFORE, Plaintiffs pray that this Court:

a. declare that Defendants, jointly or severally, have violated the Ohio Laws Against Discrimination and the Fair Housing Act; and

b.order such equitable relief as will make them whole; more than $25,000 in compensatory damages; more than $25,000 in punitive damages; prejudgment and post-judgment interest; costs; attorneys' fees, and such other relief as the Court may deem appropriate.

By: */s/ Samuel M. Schlein*
Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)
Helen M. Robinson (0097070)
*(hrobinson@marshallforman.com)*
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-900

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

By: */s/ Samuel M. Schlein*
Samuel M. Schlein (0092194)